**In re D.R.L., Inc., Debtor.**

**CAPITAL GROWTH ADVISORS, INC., Newport Plaza Associates, L.P., and Admiral's Gate Associate, Plaintiffs,**

**v.**

**D.R.L., INC., Defendant.**

**Bankruptcy No. 88–00781.
Adv. No. 88–0074.**

United States Bankruptcy Court,
D. Rhode Island.

Sept. 8, 1989.

---

Gregory Hamilton, Winograd, Shine & Zacks, P.C., Providence, R.I., for plaintiff.

Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for defendant.

**1.** The Complaint was brought by three plaintiffs: Capital Growth Advisors, Inc., Newport Plaza Associates, L.P. ("Newport Plaza"), and Admiral's Gate Associates ("Admiral's Gate"). In the complaint, each plaintiff brought a separate count against D.R.L. seeking an order requiring D.R.L. to release its liens on the various construction projects. The parties have settled the disputes with Newport Plaza and Admiral's Gate, leaving only the Capital Growth claim for decision by the Court.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on June 5, 6, 9 and 20, 1989, on the Complaint of Capital Growth Advisors, Inc. ("Capital Growth")[1] seeking an Order *inter alia,* requiring the debtor, D.R.L., Inc. ("D.R.L.") to release liens on Capital Growth's property located on Courtland Street, Providence, Rhode Island ("the Courtland Mews project"). Capital Growth also requests reimbursement for expenses incurred, after D.R.L.'s termination, to complete the Courtland Mews project. In its Answer, D.R.L. counterclaims that Capital Growth is indebted to it for additional or extra services performed at the request of Capital Growth. It is agreed in the Joint Pretrial Order that D.R.L. is entitled to a credit of $66,444.74 for extras, and that Capital Growth has a $2,000 credit for screens not installed by D.R.L. Except for these two points of agreement, however, numerous other items remain in dispute, including the large factual issue—which contract (and price) the parties agreed to be bound by.

Upon consideration of all the evidence, including the lengthy testimony of five witnesses, the many and voluminous exhibits, and the arguments of counsel, we make the following findings of fact and conclusions of law:[2]

1. That the parties agreed to be bound by the contract dated December 1, 1986, in the amount of $921,500. (Defendant's Exhibit A).[3] In making this finding, we accept generally the testimony of Ronald A. Levesque, president of D.R.L., that this

**2.** This opinion constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

**3.** Although this contract is in the name of Capital Growth Companies (not Capital Growth Advisors) the parties have consistently treated these two corporate entities as one and the same throughout the pendency of this proceeding. Because neither party raised the corporate identities as an issue, we join the parties in treating the "Capital Growth" companies as a single entity in this litigation.

was the contract price initially agreed to,[4] and that the subsequent February 6, 1987 contract, with a construction price of $843,-000, was never the real agreement, but was a device, privately conceived by the parties, for the sole purpose of enabling Capital Growth to obtain the construction loan from Eastland Bank. (Capital Growth was of the opinion that the Bank would not have approved a loan in the higher amount of $921,000.) In so ruling, we reject the testimony of Joseph Dabek who testified that the February 6 contract was the real thing, and that he had "no recollection" of how the December 1, 1986 contract came into existence, notwithstanding his acknowledgement of the genuineness of his signature on the document.

2. That, considering the demeanor and credibility of the witnesses, together with the plausibility of their respective versions of the facts, we find that Joseph Dabek has failed to establish his (and Capital Growth's) position, as to many of the material, disputed issues. For example, Mr. Dabek's testimony on such matters as: the reason Levesque gave the Bank his personal guarantee; the true relationship of the parties when they entered into the construction management contract; the manner and method by which decisions regarding construction were made; the way in which change orders were handled; the reason why D.R.L. was responsible for paying the architect; and the financial condition of the project in general, is just not believable. Because most of his testimony regarding those factual issues is simply not plausible, it is rejected. Specifically, for example, we accept Levesque's assertion that there were discussions between D.R.L., Capital Growth, and the architect, concerning how and why certain changes were made during construction. Those discussions and agreements bear significantly on the reasonableness of D.R.L.'s claim for reimbursement of expenses, and Capital Growth's request for payment of costs incurred to complete the project.

3. While we do not accept Levesque's evidence entirely, and on every point, we find that in general his testimony is more plausible and more believable than Dabek's, and that in our opinion he has established his position, dollar-wise, as to *at least* eighty (80) percent of what he is asserting. Based on Levesque's estimate of $70,000 as the cost to complete the project, this 80% translates to $87,500, which we find to be reasonable in light of all of the evidence.[5]

■ 4. That the expenses incurred by D.R.L. in connection with the New England Electric and Albert Fischer matters were legitimate, necessary and reasonable extra costs, for which D.R.L. should be reimbursed. Levesque testified that the electrical work cost an additional $43,000 above the contract price, because of the building code requirement that there be main electrical service to both buildings, rather than in only one (as was incorrectly specified by the plaintiff's architect). In addition, D.R.L. incurred expenses of $29,253.55 above the contract price, concerning Spire Construction's defective and unfinished framing work, which Albert Fischer was hired to repair and complete.

4. Both Levesque and his estimator, William Bigelow, testified that the figure of $921,500 did not include a profit factor for D.R.L. This is because originally, Levesque understood that he was to be a partner in the project, and that he was to receive a percentage of the profit from the sale of the condominiums. For that reason, he did not build a profit into the contract, but rather charged only his cost to construct the condominiums. In fact, Levesque so firmly believed he was a partner in Courtland Mews, that he gave the Bank his personal guarantee, along with the guarantees of the other three "partners," in order to obtain financing.

5. While we have actually reviewed each item, in detail, to arrive at our findings and conclusions herein, it would be unproductive to address and to scrutinize each one individually, herein, considering the large number of disputed items, the form in which they have been presented (*see, e.g.,* Plaintiffs' Exhibits No. 5, 6, and 7) and the relatively brief attention given to some at trial.

5. That many of the items of reimbursement requested by D.R.L. fall into the same type or category as those presented by Capital Growth, and, therefore, should be determined in the same manner. Levesque testified that D.R.L. incurred $10,890.13 in extras,[6] and by applying the 80% credibility/reasonableness standard previously established, D.R.L. is entitled to reimbursement of $8,712.10 for those items.

6. With the above considerations in mind, the following itemization and dollar allocation represents what we find to be the fair and reasonable respective claims of the parties:

Capital Growth

| | |
|---|---|
| 1. Previously paid to D.R.L. | $1,047,957.00 |
| 2. Extras agreed to (in Joint Pretrial Statement) | 2,000.00 |
| 3. Reimbursement for release of New England Electric lien (agreed upon during trial) | 15,000.00 |
| 4. Cost to complete the project | 87,500.00 |
| TOTAL | $1,152,457.00 |

D.R.L.

| | |
|---|---|
| 1. Contract price | $ 921,500.00 |
| 2. Change orders | 196,093.00 |
| 3. Extras agreed to (in Joint Pretrial Statement) | 66,444.00 |
| 4. New England Electric | 43,000.00 |
| 5. Albert Fischer | 29,253.55 |
| 6. Miscellaneous | 8,712.10 |
| TOTAL | $1,265,002.65 |

Based on the foregoing determinations, it is our conclusion that Capital Growth is indebted to D.R.L. in the amount of $112,545.65. In addition, Capital Growth's request for an Order requiring D.R.L. to remove it's lien on the subject property is DENIED, until the monetary portion of this decision is satisfied.

Enter Judgment accordingly.

6. These items consist of: (1) the grounding pit, $815.79, (2) hardware, $1,934.34, (3) landscaping, $2,000, and (4) painting, $6,140.